582 So.2d 833 (1991)
Wayne MILEY and Nelda Miley
v.
William E. LANDRY, et al.
No. 90 C 2158.
Supreme Court of Louisiana.
June 21, 1991.
Rehearing Denied September 5, 1991.
Thomas K. Kirkpatrick, Kirkpatrick, Keyser and Kirkpatrick, Baton Rouge, for plaintiffs-applicants.
Richard B. Nevils, Baton Rouge, for defendant-respondent.
No counsel listed for William Landry.
WATSON, Justice.
After an automobile collision, the fault of defendant, William E. Landry, was stipulated and trial was held on the quantum due plaintiffs, Nelda Pilgrim Miley and her husband, Malcolm Wayne Miley. Because Nelda Miley suffered from prior physical and emotional problems, she was an "eggshell" victim, who went from a functioning status into a psychotic state after the accident. The trial court allowed damages only for a soft tissue injury and the court of appeal affirmed 568 So.2d 680. This court must decide whether the failure to award damages for the physical and mental disability precipitated by the accident is clearly wrong.

FACTS
Nelda Pilgrim Miley, born in 1935, is a graduate of Louisiana College in Pineville and Southwestern Seminary in Fort Worth, with two degrees in music. She was a professional organist, who married Malcolm Wayne Miley in 1957.
In 1971, Nelda and Wayne Miley were working at a large Baptist church in Richardson, Texas. In addition to serving as a church musician, Nelda had four children, a large house, no household help and church entertainment duties. She became overwhelmed by her responsibilities. After pastoral counseling, she was referred to a psychiatrist, who admitted her to Beverly Hills Psychiatric Hospital in July of 1971, for a stay of approximately two and a half months. Subsequently, on January 7, 1972, Nelda was admitted to Timberlawn *834 Psychiatric Hospital in Dallas and remained over seven months. She was discharged with a prescription for Prolixin. After an overdose, she was again admitted to Timberlawn on January 22, 1973, and discharged on February 6, 1973. The diagnosis was "Schizophrenia, schizo-affective type, depressed." (Exhibit # 1, p. 19).
Between February of 1973 and the accident on January 15, 1985, Nelda Miley did not have any psychiatric treatment. When her husband lost his job in Texas, they moved to Denham Springs for about seven years and then to Baton Rouge. In 1979, she had a lumbar laminectomy.
Dr. Thomas B. Flynn, a neurosurgeon, initially saw Nelda Miley at Baton Rouge General Hospital in January of 1983. She had developed chronic back pain after the 1979 surgery, and she displayed the clinical criteria of a person with a recurrent disc rupture, which is a protrusion of disc material where surgery has previously been performed. In the initial surgery, about 75 percent of the disc material is removed and there is a six percent chance of a recurrence. Dr. Flynn thought spinal fusion surgery was indicated and Dr. Richardson of Tulane University in New Orleans concurred.
On April 19, 1983, Dr. Flynn performed a posterior, lumbar fusion and excised Nelda Miley's recurrent disc rupture. The disc material was removed; a bone graft was placed in the disc interspace and the two spinal segments were fused. Nelda had an uneventful post operative course although she was still having significant low back pain and spasms at the time of her discharge on May 2, 1983. Pain medication, muscle relaxants and a lumbosacral corset were prescribed. On May 26, 1983, when she still had muscle spasms, Elavil and Prolixin were prescribed. On June 20, 1983, Nelda Miley looked chipper, felt better and seemed to be doing well. On August 1, 1983, she was walking about two miles a day. Although she had back and leg pain, Dr. Flynn ascribed her discomfort to increased activity. A CAT scan showed the fusion to be progressing satisfactorily. On September 13, she was not having any back problems. On November 15, 1983, the CAT scan showed excellent progression of the fusion, and the back brace was discontinued. On November 29, 1983, Nelda Miley was having occasional symptoms, but was optimistic, in good spirits, and did not request any pain medication.
On February 29, 1984, Nelda said she could live with her symptoms. She was sleeping well, two or three nights out of four, and taking one or two Tylox tablets every three or four days. Tylox is a synthetic narcotic equivalent to a grain and a half of codeine. An x-ray, a Tomogram, showed fusion on the right side but incomplete fusion on the left side. Despite some ongoing pain, Nelda seemed happy. On June 11, 1984, she still had pain, but Elavil and Prolixin were substituted for narcotics. On August 30, 1984, she was not taking any medication and seemed to be functioning satisfactorily. Dr. Flynn noted on Nelda's chart that she seemed content and happy.
After the collision on January 15, 1985, Nelda Miley went to the emergency room at Baton Rouge General Hospital where muscle relaxants were prescribed. Although she asked for Dr. Flynn, the emergency room physician suggested she see her neighborhood physician, Dr. Victor Harvey. Dr. Harvey referred Nelda back to Dr. Flynn.
Malcolm Wayne Miley, age 53, graduated from Louisiana College and Southwestern Seminary at Fort Worth, Texas, with a master of church music degree. Nelda also obtained her master's degree at Southwestern Seminary while they were there. In January of 1985, their home was very happy. They were pleased about their oldest son's preparation for marriage. When Wayne was called to the scene of the accident, Nelda was extremely upset and the next day her pain was more pronounced. She was distressed and concerned that she had undone all the good from her surgery. The automobile accident created an immediate change in her personality. It caused so much trauma that she became fearful of everything, suffering not only physical pain but emotional fear.
*835 On April 17, 1985, Dr. Flynn's examination showed a limited range of motion in the lumbar spine. A nerve conduction study on April 18, 1985, showed a slowing of nerve conduction in the nerve root at the L-4 level on the right side. The test indicated some impairment in function of the nerve root, probably from scar tissue at the surgical site. Nelda was given a prescription for a pain medication equivalent to Tylox. One of Dr. Flynn's associates gave her a prescription for narcotics on April 19, 1985. On May 15, 1985, she described ongoing, localized pain for which she was taking aspirin. Her fusion was stable. On June 27, 1985, she was given ten tablets of Tylox.
As a result of the accident, Nelda Miley had a diminished range of motion but no other objective symptoms. Dr. Flynn's diagnosis was a musculoskeletal strain.
In June of 1984, Dr. Flynn had referred Nelda Miley to Dr. Cary Dennis Rostow, a clinical psychologist, for help with her chronic back pain. She saw Dr. Rostow on June 21, 1984, and had biofeedback sessions with him on June 26, June 28, July 2, October 30, November 8 and November 14 of 1984. During that summer, Dr. Rostow gave Nelda Miley a psychological test, the Minnesota Multiphasic Personality Inventory. Her profile showed depression, pessimism, introversion, lack of self confidence, aloofness and feelings of failure, but she was above the clinical line of sanity, which separates the normal and abnormal. Although extremely fragile, she was not psychotic.
When Dr. Rostow saw Nelda after the accident, on April 6, 1985, she was a grossly different person: disorganized, anxious and depressed, with peculiar verbalizations. She exhibited tangential thinking, meaning that she could not hold to a particular topic. Nelda had become very ill since Dr. Rostow had seen her in November.
In Dr. Rostow's opinion, the discomfort and pain resulting from the automobile accident was a factor in Nelda Miley's rapid and abrupt decompensation. Because the automobile accident had exacerbated her back problem and given her neck problems, she feared becoming an invalid. Dr. Rostow described the effect of the accident as follows: "This is a very, very fragile woman with some very specific biogenetic weaknesses. This kind of accident, happening as it did at that moment in her life appears to have contributed to a set of events that resulted in a devastating illness." (Tr. 113). Dr. Rostow saw Nelda three times in April and three times in May. In May of 1985, her behavior had deteriorated. She had become suspicious and depressed: her face was a stiff mask. She found it difficult to hold trends of conversation, had inexplicable emotional outbursts and cognitive dissonances.
Nelda saw Dr. Rostow again on May 8, 15 and 22 of 1985. She was taking medication but appeared tired and confused, exhibiting paranoia, distress and illogical thinking. Her overall appearance was deteriorating. In Dr. Rostow's opinion, the accident was a factor in the downturn of Nelda's psychological condition, which resulted in her hospitalization. It was "a significant stressor." (Tr. 118).
Because she was clearly disturbed, Dr. Rostow referred Nelda Miley to Dr. Henry Ehrlich, a psychiatrist, whom she saw on May 23, 1985. Dr. Ehrlich prescribed Stelazine, an antipsychotic, and Xanax, an antianxiety drug.
On May 28, 1985, Dr. Ehrlich and Dr. Rostow agreed that Nelda should be hospitalized, and she was admitted to Parkland Hospital. Although she was anxious and depressed, this hospitalization was necessary primarily because of Nelda's back pain.
Dr. Henry Barto Ehrlich testified as an expert in psychiatry. When he saw Nelda Miley, she was fifty years old and had been married almost thirty years. In the 1985 collision, she suffered a jolt to her back, which aggravated severe left lower spinal pain. She felt that she couldn't hold her back straight. She also had pain in the left leg down to the ankle, pain between the shoulder blades, and numbness with tingling in her ankle and shoulder. She described disturbed sleeping patterns and nightmares. She was very unhappy, had *836 tangential speech and exhibited a paranoid trend.
Nelda Miley took Dr. Ehrlich's medicine indiscriminately, either to stem her anxiety and her psychotic decompensation or to relieve the pain in her back. When she was hospitalized at Parkland on May 28, she could not be trusted with medication and appeared prone to suicide, but she was also experiencing real back pain. An antidepressant which Dr. Ehrlich prescribed, Sinequan, seemed to make her worse. Stelazine, an antipsychotic, 15 milligrams each night, improved her enough to be discharged from the hospital on June 18, 1985. Dr. Ehrlich continued to see her weekly. After being taken off Cogentin, which prevents side effects from antipsychotic medication, she was hospitalized again, July 23 through July 31, 1985. She rapidly improved after being placed back on Cogentin.
Dr. Ehrlich continued to see Nelda on a weekly basis until 1987, when she was hospitalized twice, once on March 25 when she became depressed after she discontinued her medication and again on May 16. Her husband committed her in March because she was in such a miserable state. On May 16, 1987, she was hospitalized for 13 days after overdosing on Navane, an antipsychotic drug, Asendin, an anti-depressant, and Cogentin. She complained about her back; she was emotionally impaired, anxious and out of contact with reality. During this hospitalization, she and Wayne Miley separated on May 28, 1987. He chose a time when she would be under medical care.
When discharged, Nelda Miley was still depressed but in contact with reality and not suicidal. Dr. Ehrlich saw Nelda on a weekly basis until she took an overdose in July of 1988, was hospitalized and then transferred to the Northshore Psychiatric Hospital in Slidell. After her release from the Slidell hospital, Dr. Ehrlich continued treating her on a weekly basis until trial on November 21, 1988. In Dr. Ehrlich's opinion, Nelda Miley needs future weekly psychiatric treatment. She has low self esteem and needs a confidant. Although functioning at a marginal level, she is fortunate to be doing that well. Dr. Ehrlich said she is still "as lethal [to herself] as any patient I have...." (Tr. 169). He charges $75 per visit.
Nelda Miley suffers from a specific biogenetic weakness, a schizoaffective disorder. Stress can exacerbate the emergence of this disorder. After having the problem between 1970 and 1973, Nelda was able to function until the underlying illness emerged under stress. In Dr. Ehrlich's expert opinion, the automobile accident was the most important factor in her psychotic decompensation after the accident. Her illness was "precipitated" by the automobile accident. (Tr. 156).
The aggravation of Nelda Miley's back pain by the accident started the psychotic decompensation, which became an extremely serious illness. The pain from the accident caused fear of invalidism, fear of losing her spouse and fear of becoming useless.
The accident was one of two major factors in her 1985 deterioration, the other one being her mother's death. Dr. Ehrlich thought the accident and the genuine pain it caused were more important than the death of her mother. In his opinion, the automobile accident was the major factor. Until the accident occurred, Nelda Miley was relatively well, functioning without psychotherapy, medication, unhappiness and depression for about twelve years. After her psychotic illness was precipitated by the accident, she has remained ill. Dr. Ehrlich said: "Once this illness gets rolling, it is very difficult to stop. If she hadn't had the automobile accident, maybe it wouldn't have got rolling at all. Maybe she wouldn't have become psychotic at all and never gone into any hospital. I don't know" (Tr. 159). Her illness might never have recurred without the automobile accident.
Because of her prior years of chronic pain, disability and two serious operations, Nelda not only suffered from aggravated pain but fear of increased pain. She also worried that her husband would desert her if she had another long illness. In Dr. *837 Ehrlich's opinion, the accident had a lot to do with that fear and the timing of her husband's departure.
Nelda Miley is now self-employed as a piano teacher with 27 students. She charges her piano students $45 a month, which results in a very low hourly wage. Because of her psychiatric problems, her insurance and medical benefits have been greatly reduced.
Although their connection with the accident was disputed, it was stipulated that Nelda Miley had the following medical expenses: 1985, $24,541.24; 1986, $6,886.34; 1987, $22,682.24; 1988, $28,185.32, for a total of $82,295.14.
At trial, the only defendant was the Mileys' uninsured/underinsured carrier, Southern Farm Bureau Insurance Company. Plaintiffs settled with Landry's insurers for $12,500 prior to trial.
The trial court awarded damages of $17,524.00, finding that the only direct result of the accident was a soft tissue injury which aggravated Nelda Miley's previous back condition and caused physical pain, stiffness and soreness for a period of five months. The trial court denied any damages for Nelda Miley's psychological problems, finding that: "Mrs. Miley's hospitalization probably would have occurred even if the accident had not happened." (Tr. 27). The court of appeal affirmed in a two sentence per curiam opinion which adopted the reasons of the trial court.

CONCLUSION
The trial court was clearly wrong. Dr. Rostow said the accident was a factor in her devastating illness. Dr. Ehrlich said it was a significant factor, one of two major factors, and the most important factor in her decompensation. The trial court's statement that the hospitalization probably would have occurred without the accident is contrary to the evidence. Nelda Miley's underlying weakness, her schizoaffective disorder, emerged because of the stress from the accident. Moreover, her first hospitalization after the accident, on May 28, 1985, was primarily for treatment of her exacerbated back pain.
Contrary to the trial court, Nelda Miley's marital problem, her post accident desertion by her husband, did not cause her illness. It resulted from her descent into psychosis.
Nelda Miley has a borderline personality, but she was functioning before the accident. There was a dramatic change in Nelda Miley's condition before and after the accident: the most important factor in the change was the accident. See American Motorist Insurance Company v. American Rent-All, Inc., Bruce Lee and The Hanover Insurance Company, 579 So.2d 429 (La.1991) consolidated with Rose Ann Walton v. American Rent-All, Inc., Bruce Lee and The Hanover Insurance Company, 579 So.2d 429 (La.1991).
Although Nelda Miley's descent into psychosis might have occurred without the automobile accident, Dr. Ehrlich testified that her illness was precipitated by the accident. The other evidence all substantiates that opinion. When a defendant's negligent conduct aggravates a pre-existing condition, the victim must be compensated for the full extent of the aggravation. Perniciaro v. Brinch, 384 So.2d 392 (La.1980), American Motorist Insurance Company v. American Rent-All, Inc., et al, supra.
The court of appeal erred in failing to find that the trial court was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Nelda Miley's past medical expenses total $82,295.14. She is now functioning at a marginal level but requires future psychiatric care. Weekly visits to Dr. Ehrlich will cost $75.00 a week. The record indicates a strong probability of future hospital treatment. An award of $10,500.00 is appropriate for future medical care. The evidence does not support an award for loss of wages but $300,000 is appropriate for past and future physical and mental pain and suffering. Compare the awards in the strikingly similar case of American Motorist Insurance Company v. American Rent-All, Inc., et al, supra, recently decided by this court.
*838 Malcolm Wayne Miley did not prove damages for loss of consortium.

DECREE
For the foregoing reasons, the judgment of the trial court is amended to award Nelda Pilgrim Miley: $82,295.14 for past medical expenses; $10,500.00 for future medical expenses; and $300,000.00 for past and future physical and mental pain and suffering against defendant, Southern Farm Bureau Insurance Company, together with legal interest from date of judicial demand, until paid.[1] Defendant is cast for all costs.
AMENDED AND RENDERED.
LEMMON, J., dissents in part, believing that the increase in the award of general damages to compensate for mental anguish and distress should be in the range of $150,000 (the amount awarded for that element of damages in the Walton case relied on by the majority) to $200,000.
HALL, J., dissents in part, believing that $200,000 is a more appropriate award for general damages.
NOTES
[1] The judgment is subject to a stipulated credit of $12,500.