701 So.2d 475 (1997)
Gustav MIRAMON and Julie A. Miramon
v.
Sarah BRADLEY, American National Insurance, and State Farm Insurance Company.
No. 96 CA 1872.
Court of Appeal of Louisiana, First Circuit.
September 23, 1997.
*476 James E. Stovall, Covington, for Plaintiffs-Appellants Gustav Miramon and Julie A. Miramon.
Adrianne L. Baumgartner, Covington, for Defendant-Appellee State Farm Insurance Company.
Before LeBLANC and FITZSIMMONS, JJ., and CHIASSON, J. Pro Tem.[1]
FITZSIMMONS, Judge.
Plaintiff, Ms. Julie Miramon, made a claim against her uninsured-underinsured motorist carrier, defendant, State Farm Mutual Automobile Insurance Company (State Farm), for damages from a car accident in 1990. The trial court found that Ms. Miramon suffered no damages from the 1990 accident, and dismissed the case with prejudice. We reverse.

*477 FACTS AND PROCEDURAL BACKGROUND
While a student at the University of Alabama, Ms. Miramon was involved in a serious car accident in Alabama. This accident occurred in the fall of 1988. On June 26, 1990 a second minor accident occurred in St. Tammany Parish. In the second accident, Ms. Miramon was rear ended by another motorist.
After the first accident, symptoms of anorexia and difficulty in dealing with stressful situations manifested themselves. Ms. Miramon became fearful when she had to drive and worried about another accident. Subsequently, she sought treatment in January of 1990 from a team of persons. The team included Kay Miller, a licensed nurse and counselor, Dr. Steve Taylor, a psychiatrist, and Catherine Wall-Lucas, a registered dietitian. Dr. Richard Drude, a specialist in internal medicine, treated Ms. Miramon for gastroenterological problems associated with her eating disorder and stress. Ms. Miramon also participated in an eating disorder "study" at LSU conducted by a doctoral candidate.
At trial, Ms. Miramon stated that heightened anxiety and eating problems surfaced after the first accident. Ms. Miramon testified that she had trouble talking about either accident and didn't always discuss them immediately with each doctor or therapist. For a few days after the second car accident, Ms. Miramon experienced a sore neck and back. She also suffered increased emotional problems that extended from the day of the second accident until the fall. At that point, she felt that she was back on track with her treatment.
All of her treating physicians and therapists agreed that the second accident exacerbated Ms. Miramon's problems. Kay Miller, her primary therapist, testified that after her second accident, Ms. Miramon experienced increased anxiety, a setback in her treatment and recovery, and depression. Although the second accident exacerbated Ms. Miramon's diagnosed symptoms, Ms. Miller could not say specifically what increases or problems resulted from the second accident alone. She noted that other stressful experiences impacted Ms. Miramon: school tests and problems in personal relationships, also periodically affected Ms. Miramon's eating disorder and anxiety level. To treat her aggravated symptoms, Ms. Miramon required extra sessions with Ms. Miller until about September of 1990. At that time, Ms. Miramon seemed to be back on track in her treatment. However, Ms. Miller opined that the second accident would continue to impact Ms. Miramon's fear of driving. Initially, Dr. Taylor diagnosed Ms. Miramon as having an eating disorder and "post traumatic stress syndrome." A later diagnosis included depression. Although the trial court found that Dr. Taylor did not connect the second accident to any symptoms until 1992, the record contains clear evidence to the contrary. Dr. Taylor wrote, in a letter to Dr. Drude dated June 4, 1991, that Ms. Miramon continued "to be bothered by Post Traumatic Stress Disorder from two motor vehicle accidents." Dr. Taylor also testified that the second accident permanently exacerbated Ms. Miramon's diagnosed problems.
Catherine Wall-Lucas, the dietitian, first saw Ms. Miramon on February 1, 1990. The last visit, as of the time of the deposition in May of 1993, was January 7, 1993. Ms. Miramon reported an accident, but Ms. Wall-Lucas did not remember any report of a second accident. Ms. Wall-Lucas testified that Ms. Miramon was "very guarded" in her sessions and did not discuss the details of her psychotherapy. Ms. Miramon did report to Ms. Wall-Lucas other stresses in her life.
Dr. Drude saw Ms. Miramon during February of 1990. He diagnosed irritable bowel syndrome, mild lactose intolerance, and chronic active gastritis. During a visit on August 8, 1990, Ms. Miramon reported an accident that occurred about a month before. Dr. Drude remembered that she suffered "the usual aches and pains" and that it affected her nerves. In his notes, Dr. Drude specifically mentioned a sore neck for about a week after the second accident. He testified that Ms. Miramon's office visits were more frequent and she had more complaints for a period of time after the June 1990 accident. He remembered that her stress level perceptibly increased shortly after the accident, but *478 it was impossible for Dr. Drude to separate out a single cause for the increase in symptoms. Dr. Drude preferred to refer the question of specific problems related to the second accident to Dr. Taylor, her treating psychiatrist.
Dr. Barbara Cubic, a licensed psychologist, was involved in an eating disorder program while a third year doctoral student at L.S.U. Ms. Miramon joined the eating disorder group at LSU in August of 1990. Ms. Miramon mentioned the 1988 accident to Dr. Cubic, but not the second accident. Dr. Cubic testified that it is normal for someone with an eating disorder to have exacerbated problems under stress. When asked how a second accident would impact Ms. Miramon's problems, Dr. Cubic answered that it would probably increase her eating disorder and anxiety symptoms.
Dr. Richard Roniger, the defendant's expert, saw Ms. Miramon once in 1995. In his opinion, she was anorexic and had perfectionist traits. However, Dr. Roniger did not find that she met the diagnostic criteria for post traumatic stress disorder. He agreed that a minor second accident would be more significant to a person traumatized by an initial serious accident. Moreover, a second accident would aggravate the problems she experienced after the first accident. On the issue of nonreporting of the second accident, Dr. Roniger stated that a failure to report could mean that the incident had no importance, or that the patient had reasons for not reporting.
State Farm stipulated to liability and coverage. The issue was whether Ms. Miramon had suffered any damages from the second accident.
In denying any recovery to Ms. Miramon, the trial court apparently discounted the testimony of all of the treating doctors and therapists, as well as the uncontradicted testimony of Ms. Miramon. Despite the evidence, the trial court found that the second accident had not contributed to an increase in Ms. Miramon's symptoms. Instead, the trial court relied on the inability of the experts to specify that the aggravation was caused by one factor alone, the second accident. Ms. Miramon's failure to report the second accident to each healthcare professional also seemed to influence the trial court.

APPLICABLE LEGAL PRINCIPLES
Plaintiff has the burden of proving cause-in-fact of damage by a preponderance of the evidence. Proof may be made by direct or circumstantial evidence, when the evidence, taken as a whole, shows that causation is more probable than not. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). If a defendant's tortious conduct aggravates a pre-existing condition, the defendant is liable to the extent of the aggravation. Lasha, 625 So.2d at 1006; Hurst v. Eaton, 588 So.2d 1130, 1137 (La.App. 1st Cir.1991). This is true even though the tortious conduct is not the sole factor in the aggravation, but is a significant contributing factor. See Miley v. Landry, 582 So.2d 833, 837 (La.1991); see generally Chenniliaro v. Kaufman & Broad Home Systems of Louisiana, Inc., 93-1126 (La.App. 1st Cir. 1/19/94); 636 So.2d 246, 252 (award upheld although more than one aggravating factor); Baumeister v. Plunkett, 27,185, p. 8-11 (La.App. 2d Cir. 8/23/95); 661 So.2d 510, 516-18 (numerous aggravating factors, many unrelated to tortious conduct), reversed on other grounds, 95-2270 (La. 5/21/96); 673 So.2d 994; Koury v. Lanier Express, Inc., 528 So.2d 734, 737-740 (La. App. 3d Cir.1988) (plaintiff had pre-existing psychological problems, but latest accident moderately aggravated problems).
The factual basis for an expert opinion determines the credibility of the testimony. It is the responsibility of opposing counsel to explore the factual basis for the opinion and thus, determine its reliability. An unsupported opinion can offer no assistance to the fact finder, and should not be admitted as expert testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-97, 113 S.Ct. 2786, 2795-98, 125 L.Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116, 1121-23 (La.1993).[2] The trial judge *479 serves a "gatekeeping" function to screen and exclude "invalid" or irrelevant material. Daubert, 509 U.S. at 595-99, 113 S.Ct. at 2798-99; Foret, 628 So.2d at 1122-23.
An appellate court can reverse a lower court's factual findings when the record (1) reflects that a reasonable factual basis does not exist for the finding and (2) establishes that the finding is clearly or manifestly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If a court of appeal finds that the trial court made reversible error of law or manifest error of fact, the court of appeal must determine the facts de novo from the record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840, 844 n. 2 (La.1989).

ANALYSIS
"It is clear that what used to be the well-guarded province of the prosecutor or judge or jurythe determination of what wrong was done, who is responsible for that wrong, and what the compensation should beare now all decisions that belong, in fact if not in law, in the realm of the professional psychologist." Margaret A. Hagen, Ph.D., Whores of the Court: The Fraud of Psychiatric Testimony and the Rape of American Justice 50 (Regan Books: Imprint of Harper Collins Publishers [ISBN X-XX-XXXXXX-X] 1997). The testimony of health care professionals may provide a basis for a finding of a causal connection between the accident, the injury, and the claimed damages, but the mere fact that a psychologist or psychiatrist testifies to a diagnostic opinion based on assessment tests or studies should not end the inquiry. See Daubert, 509 U.S. at 589-99, 113 S.Ct. at 2795-99; Foret, 628 So.2d at 1122-23. Opinions should not be blindly accepted as scientific findings or proof. It is precisely this fear of blind acceptance expressed by Dr. Hagen that needs to be addressed by the judge as "gatekeeper." Acceptance should not be forthcoming until the tests and studies cited as a basis for the opinion have acquired "a theoretical foundation and empirical reliability and the diagnostic categories themselves achieve some degree of solidity to give a firm foundation for their measurement." Id. at 32. It is quite sad if the courts "have literally handed over to a bunch of entrepreneurs the determination of injury, not only in standard tort cases but even in cases of discrimination and disability." Id. at 51.
We find that Ms. Miramon did not prove that the second accident permanently aggravated or was the sole cause of the aggravation of the pre-existing conditions. The opinion that the second accident would permanently or continually impair Ms. Miramon's recovery for an extended period of time was not supported by any empirical data or vetted scientific theory.
However, we can find no reasonable basis for the trial court's conclusion that Ms. Miramon did not suffer any additional damage from the second accident. In a field as unscientific as "psychology," the focus of the trial court on the inability of therapists to specify or quantify was misplaced. The trial court was clearly wrong when it failed to credit the uncontradicted testimony of Ms. Miramon, which was supported by Dr. Drude, of a minor physical injury as evidence of damages. The trial court was clearly wrong when it failed to credit the uncontradicted testimony of Ms. Miramon that the second accident was a significant factor in the increase in Ms. Miramon's problems until the fall of 1990, which was supported by Dr. Drude, Dr. Taylor, and Ms. Miller. State Farm's expert and Dr. Cubic agreed that a second accident would aggravate the problems experienced by Ms. Miramon, and did not rebut Ms. Miramon's testimony.
Any belief by the trial court that a prerequisite to recovery was isolation of the second accident as the only aggravating factor was legal error. Additionally, under the circumstances here, the failure to report the second accident to the dietitian and Dr. Cubic did not preclude a finding for Ms. Miramon. The dietitian was a member of the team to whom the accident had been reported. Dr. Cubic was a third year graduate student when Ms. Miramon was involved in the school project on eating disorders: she was not Ms. Miramon's licensed treating psychologist. As noted by Dr. Roniger, a patient *480 can have many reasons for failure to share information, particularly with an observer not intimately involved with Ms. Miramon's long term counseling.

CONCLUSION
After a thorough review of the record, the only reasonable conclusion is that the second accident caused a minor injury to the neck, and contributed to an increase in Ms. Miramon's gastroenterological and psychological problems for a period of time. Ms. Miramon experienced a setback in her overall recovery from the day of the second accident, until the fall of that same year. Therefore, the trial court committed reversible error in failing to award some compensation for these damages.
Based on our de novo review of the record, we award $790 for medical expenses, minus $30 for one payment already made to Dr. Drude, for a total of $760. For pain and suffering from the minor physical injury and the aggravation of Ms. Miramon's symptoms for several months, we award $6000. The costs of the trial and the appeal are assessed to defendant, State Farm Mutual Automobile Insurance Company.
REVERSED AND RENDERED.
LeBLANC, J., concurs.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] See La.C.E. art. 702, 1997 Author's Notes, (1) In General & (4) Subjects of Expert Testimony for further reference.