934 So.2d 102 (2006)
Jeffrey Wayne CORKERN
v.
T.K. VALVE and I.T.T. Specialty Risk.
No. 2004 CA 2293.
Court of Appeal of Louisiana, First Circuit.
March 29, 2006.
*103 Brenda Braud, Braud & Braud, Hammond, for Plaintiff-Appellant Janice R. Cockern, as tutrix for Jordan and Jamie Corkern.
Robert J. May, Metairie, for Defendants-Appellees T.K. Valve & Manufacturing, Inc. and I.T.T. Hartford.
Before: PARRO, McDONALD, and HUGHES, JJ.
PARRO, J.
The deceased employee's ex-spouse appeals from a summary judgment dismissing claims for death benefits that she filed on behalf of her minor children after the death by suicide of their father, who had been receiving workers' compensation disability benefits at the time of his death.[1] For the following reasons, the judgment of the workers' compensation judge is reversed, and this matter is remanded.

Factual and Procedural Background
Jeffrey W. Corkern (Corkern) sustained an injury to his back on July 16, 1987, during the course and scope of his employment for T.K. Valve & Manufacturing, Inc. (T.K. Valve). As a result of this injury, Corkern underwent multiple surgical procedures on his back. However, he never obtained relief from chronic pain and was never able to return to gainful employment. In light of his disability, Corkern received workers' compensation permanent total disability benefits from T.K. Valve and its workers' compensation insurer, I.T.T. Hartford (I.T.T.).
On December 5, 2001, Corkern died as a result of a self-inflicted gunshot wound to the head. Subsequently, Janice R. Corkern, Corkern's ex-spouse, as the natural tutrix of her two minor children, Jordan and Jamie, filed a disputed claim for compensation against T.K. Valve and I.T.T.[2] In her disputed claim form, Ms. Corkern alleged that Corkern's death resulted from the injury he sustained at work on July 16, *104 1987. Accordingly, she asserted a claim for death benefits. In their answer, T.K. Valve and I.T.T. denied that Corkern's death was caused by or related to the injury sustained in his July 16, 1987 accident. Eventually, T.K. Valve and I.T.T. filed a motion for summary judgment, urging that Ms. Corkern would not be able to prove that Corkern had a work-related mental injury, as such injury had not been diagnosed by a licensed psychiatrist or psychologist as required by LSA-R.S. 23:1021(7)(d).[3]
In an effort to defeat T.K. Valve's and I.T.T.'s motion, Ms. Corkern obtained the services of Dr. James B. Denney, a board-certified psychiatrist and forensic psychiatrist, to prove that Corkern's suicide was causally related to the physical injury sustained on July 16, 1987. Dr. Denney's forensic diagnosis was that Corkern was suffering from a mental impairment that developed as a result of debilitating pain causally related solely to his original workplace injury. He reached this opinion after reviewing the medical records of Dr. David Gaudin, Corkern's treating physician, regarding the clinical condition, diagnosis, and treatment of Corkern following his job-related injury. In a preliminary evaluation report dated May 6, 2004, Dr. Denney's opinions are summarized as follows:
Corkern received multiple surgeries for his job-related back injury, frequently described as a persistent radiculopathy.
As a result of his "failed low back surgery syndrome" and subsequent persistent radiculopathy, Corkern underwent multiple attempts at palliative treatment, which were unsuccessful.
Corkern's treatment with opiate analgesics was unsuccessful.
In spite of concerns of possible opiate analgesic abuse, the data supporting this is at best marginal, and Corkern received no substance abuse evaluation or intervention. Corkern was neither evaluated nor treated in an in-patient pain management clinic, as would have been most appropriate. In all probability, Corkern was the victim of a pseudoaddiction.
As a result of his injuries, chronic/persistent pain, Corkern became very depressed and anxious. During the course of treating Corkern, Dr. Gaudin noted a diagnosis of depression and anxiety.
With the data available, his opinion with a reasonable medical certainty was that Corkern's suicide was caused by the depression and hopelessness he suffered as a direct result of his unremitting, and unsuccessfully treated, chronic pain.
Corkern's DSM-IV-TR diagnoses related to his eventual suicide are:

*105 pain disorder with psychological factors and a general medical condition;
major depressive disorder v depression NOS;
sleep disorder due to chronic pain; occupational problem (V62.2).
Based on Dr. Denney's preliminary evaluation report, Ms. Corkern submitted that genuine issues of material fact remained as to whether Dr. Denney qualified as an expert, whether Dr. Denney's opinion regarding Corkern's drug dependency was reliable, whether Corkern had been dependent on Oxycontin, whether any such dependency was causally related to his original workplace injury, whether depression was a side-effect of Oxycontin, whether Corkern's depression was caused by Oxycontin use, and whether Corkern's pain syndrome and dependency on Oxycontin led to his suicide.
In response to Ms. Corkern's opposition, T.K. Valve and I.T.T. urged that summary judgment was appropriate in this case, citing this court's opinion in Bethley v. Keller Constr., 01-1085 (La.App. 1st Cir.12/20/02), 836 So.2d 397, writ denied, 03-0228 (La.4/21/03), 841 So.2d 792. T.K. Valve and I.T.T. argued that the Bethley case established that a psychological autopsy is unreliable when offered to show why a person committed suicide and should be excluded when used to prove that a suicide death was caused by depression related to a job accident. They further urged that a forensic psychiatric opinion based solely on a review of medical records was insufficient to satisfy the statutory requirement that the mental injury be diagnosed by a licensed psychiatrist or psychologist. See LSA-R.S. 23:1021(7)(d).
During the hearing on this matter, the workers' compensation judge (WCJ) expressed concern about the fact that there had been no diagnosis of a mental injury as required by LSA-R.S. 23:1021(7)(d) prior to Corkern's suicide. In the absence of a preceding diagnosis of a mental injury, the WCJ found that an essential element of proof was lacking. The WCJ further remarked that a post-death diagnosis by a forensic psychiatrist is insufficient to satisfy the statutory requirements of paragraph (7)(d). Based on these findings, the WCJ ruled that summary judgment was appropriate, apparently without examining the content of Dr. Denney's preliminary evaluation report and the medical records on which he relied. Relying on the arguments made by the parties and the Bethley case, the WCJ granted the motion for summary judgment and dismissed Ms. Corkern's claims. Ms. Corkern appealed, contending the WCJ erred in granting a summary judgment based on the Bethley case without first conducting a hearing to determine the reliability of Dr. Denney's diagnosis as required by Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Discussion
When faced with a proffer of expert scientific testimony, the trial judge must determine at the outset whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226, 234; Daubert, 113 S.Ct. at 2796; see LSA-C.E. art. 702. In fulfilling this gatekeeping role, the trial judge must ensure that the proffered evidence is not only relevant, but reliable, by utilizing a flexible approach requiring that consideration be given to factors such as whether *106 the technique can be (and has been) tested, whether it has been subjected to peer review and publication, whether there is a known or potential rate of error, and whether the relevant scientific/expert community generally accepts the technique. Daubert, 113 S.Ct. at 2796-97;[4]Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149-50, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999). Each of these factors may or may not be relevant to the particular inquiry. Kumho, 119 S.Ct. at 1175. The Daubert standards should be considered by the trial judge in deciding whether to admit expert opinion evidence in support of or in opposition to a motion for summary judgment. Independent Fire, 755 So.2d at 235-36.
In Bethley, the WCJ excluded the psychological autopsy after conducting a full Daubert analysis relative to its admissibility. This court noted the WCJ's comments in that case that although the psychological autopsy is relatively reliable to show whether a person had a mental or substance abuse disorder or whether an incident was a suicide or a homicide, he questioned its reliability to prove that a suicide was caused by a specific work-related accident. The WCJ opined in Bethley that a psychological autopsy was unreliable in revealing the cause of a mental disorder and why a person decided to take his or her own life at a given point in time. After determining that the Daubert/Kumho requirements for admissibility of an expert's opinion had not been satisfied, the expert testimony was excluded by the WCJ. Bethley, 836 So.2d at 402.
On review of the judgment by the WCJ in Bethley, this court observed that a trial judge has broad discretion in determining whether Daubert's specific factors are reasonable measures of reliability in a particular case. Bethley, 836 So.2d at 403. Ultimately, the trial judge's decision to admit or exclude expert testimony is subject to the abuse of discretion standard of review. Kumho, 119 S.Ct. at 1176. In ruling on the admissibility of the expert's testimony in Bethley, this court did not simply accept the WCJ's broad pronouncement that a psychological autopsy is unreliable in revealing the cause of a mental disorder or why a person decided to take his or her own life at a given point in time. Nor did this court interpret LSA-R.S. 23:1021(7)(d) as mandating a pre-suicide diagnosis of a mental injury or illness to support Ms. Bethley's claim for death benefits.[5] Instead, this court considered the following factors in determining whether there had been an abuse of discretion in the WCJ's ruling on the admissibility of the psychological autopsy: (1) whether the expert had ever met or interviewed the deceased, (2) the source of the information on which the expert relied, (3) the reliability of such source, (4) whether such information was corroborated by information from other sources, and (5) the reliability of the corroborative evidence. See Bethley, 836 So.2d at 403.
In this case, the WCJ did not conduct a Daubert analysis of any kind. The WCJ's misinterpretation of Bethley resulted in her failing to consider any of the *107 requisite reliability factors to determine the admissibility of Dr. Denney's diagnosis, as mandated by Daubert and Independent Fire. We conclude that the exclusion of the evidence without an evaluation of the relevant reliability factors constituted legal error. Such an analysis is crucial to determining the admissibility of Dr. Denney's post-death diagnosis in this case. Accordingly, we conclude that summary judgment was improperly granted in this case.

Decree
For the foregoing reasons, the judgment is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to T.K. Valve & Manufacturing, Inc. and I.T.T. Hartford.
REVERSED AND REMANDED.
NOTES
[1] The workers' compensation judge in this case was Elizabeth A. Warren of District 6.
[2] In the disputed claim form, the claimant was incorrectly identified as the deceased, and I.T.T. Hartford was incorrectly identified as I.T.T. Specialty Risk.
[3] At the time of the accident, the jurisprudence interpreted the then-applicable paragraph (7) of Section 1021 as covering a physical-mental injury. See Sparks v. Tulane Medical Center Hospital and Clinic, 546 So.2d 138, 143 (La.1989). Although LSA-R.S. 23:1021(7)(d) was not enacted until after Corkern's 1987 accident, this provision, as well as the others in this paragraph pertaining to the burden of proof, apply retroactively as they are procedural in nature. See Creed v. Avondale Industries, Inc., 608 So.2d 226, 229 (La.App. 5th Cir.1992); McKnight v. General Motors Corporation, 32,629 (La.App. 2nd Cir.1/26/00), 750 So.2d 454, 458, writ not considered, 00-0675 (La.3/17/00), 756 So.2d 316; cf. Bryant v. Giani Investment Company, 626 So.2d 390, 392 n. 1 (La.App. 4th Cir.1993), writ denied, 94-0089 (La.3/18/94), 634 So.2d 852. Paragraph (7) of Section 1021 was redesignated as paragraph (8) of Section 1021 in 2004 pursuant to the statutory revision authority of the Louisiana State Law Institute so that the paragraphs would appear alphabetically. However, we will refer to LSA-R.S. 23:1021(7)(d) as the applicable law in this opinion.
[4] Louisiana has adopted the Daubert standards for admissibility of expert opinion evidence. State v. Foret, 628 So.2d 1116, 1122-23 (La.1993); see Independent Fire, 755 So.2d at 234.
[5] Paragraph (7)(d) required a diagnosis of a mental injury or illness by a licensed psychiatrist or psychologist. The statute did not mandate that such a diagnosis be made prior to an employee's death. Thus, we conclude that paragraph (7)(d) does not automatically preclude the use of a diagnosis of a mental injury or illness made after the death of the employee.