PARRO, J.
 

 |2Herman Carrier, individually and as administrator of the estate of his minor child, Herman Blake Carrier, and his wife, Wendy Wallace Carrier (collectively, the Carriers), appeal a judgment granting a motion for summary judgment and dismissing their claims against Sears, Roebuck and Company (Sears). For the following reasons, we reverse the judgment and remand to the district court for further proceedings.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 Six-year-old Blake Carrier (Blake) was riding his bicycle on a tennis court at Fleet Easley Memorial Park in Amite, Louisiana, wearing a bicycle helmet manufactured by Bell Sports, Inc. (Bell), which had been purchased by his parents at a Sears store in the Hammond Square Mall.
 
 [1]
 
 The tennis court was open to the public, but the nets had been removed, leaving only the posts in place. While riding his bike, Blake’s right handlebar hit one of the net posts, causing him to fall. As he fell, his forehead was exposed to a hook protruding from the post. The hook punctured his forehead just above the right eye, causing a skull fracture and brain damage.
 

 The Carriers filed suit against the City of Amite and Bell; other defendants, including Sears, were named in amending petitions. Sears filed a peremptory exception raising the objection of no cause of action, which was denied by the trial court. Sears’ application for supervisory writs was denied by this court. After conducting discovery, Sears filed a motion for summary judgment, contending that the Carriers could not establish the existence of a duty on the part of Sears to provide “point-of-sale” fitting instructions for bicycle helmets, nor could they prove that the purported breach of this alleged duty caused their damages. Sears also filed a motion in limine, seeking to exclude the testimony of the Carriers’ expert, James M. Green, whose testimony would be used to establish Sears’ duty, on the basis that his testimony could not meet the
 
 Dau-bert/Foret/Kumho
 
 (Daubert) test for reliability. The court heard both motions in a hearing on January 28, 2008, and signed a judgment on February 11, 2008, excluding Green’s testimony and dismissing all of the Carriers’ claims against Sears. The Carriers | ..¡appealed, arguing that the court abused its discretion in excluding Green’s testimony without conducting a
 
 Daubert
 
 analysis and in granting Sears’ motion for summary judgment when evidence presented by the Carriers showed Sears had breached its duty to size and fit bicycle helmets at the point of sale.
 

 MOTION IN LIMINE
 

 Article 702 of the Louisiana Code of Evidence provides:
 

 
 *896
 
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 

 When faced with a proffer
 
 of
 
 expert testimony, the trial court must determine at the outset whether the expert is proposing to testify to scientific, technical, or specialized knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue.
 
 Corkern v. T.K. Valve,
 
 04-2293 (La.App. 1st Cir.3/29/06), 934 So.2d 102, 105. In determining whether to admit expert opinion evidence at the summary judgment stage, the
 
 Daubert
 
 standards should be considered by the trial court.
 
 Independent Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 235-36,
 
 citing Daubert v. Merrell Dow Pharm., Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and
 
 State v. Foret,
 
 628 So.2d 1116 (La.1993). In the
 
 Independent Fire
 
 case, the Louisiana Supreme Court reinforced several underlying principles:
 

 The first is that the trial judge cannot make credibility determinations on a motion for summary judgment.... Second, the court must not attempt to evaluate the persuasiveness of competing scientific studies. In performing its ga-tekeeping analysis at the summary judgment stage, the court must “focus solely on the principles and methodology, not on the conclusions they generate.” ... Third, the court “must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion.” ... Fourth, and most importantly, summary judgments deprive the litigants of the opportunity to present their evidence to a jury and should be granted only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue of material fact in dispute. If a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under
 
 Daubert-Foret
 
 and the other applicable evidentiary rules, and is sufficient to allow a reasonable juror to conclude that the expert’s opinion on a material fact more likely than not is true, the trial judge should deny the motion and let the issue be decided at trial.
 

 Independent Fire,
 
 755 So.2d at 236 (citations omitted). The factors to be used by the court in analyzing the admissibility of expert scientific testimony are whether or not the |technique had been subjected to peer review and/or publication, the known or potential rate of error, the existence of standards controlling the technique’s operation, the technique’s refutability or testability, and the technique’s general acceptance in the scientific community.
 
 Id.
 
 at 234 n. 3.
 

 When confusion arose over whether the
 
 Daubert
 
 test applied to nonscientific expert testimony, the United States Supreme Court stated that
 
 Dau-beH’s
 
 holding — setting forth the trial court’s general gatekeeping obligation— applies not only to testimony based on scientific knowledge, but also to testimony based on technical and other specialized knowledge.
 
 Kumho Tire Co., Ltd. v. Carmichael,
 
 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999). However, the court held that the test of reliability is flexible, and
 
 Daubert’s
 
 list of specific factors neither necessarily nor exclusively applies to all experts or in every case.
 
 Id.
 
 “The factors identified in
 
 DaubeH
 
 may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert’s particular’ expertise, and the subject of his testimony.”
 
 Kumho,
 
 526
 
 *897
 
 U.S. at 150, 119 S.Ct. at 1175. “[T]he law grants a district court the same broad latitude when it decides
 
 how
 
 to determine reliability as it enjoys in respect to its ultimate reliability determination.”
 
 Kumho,
 
 526 U.S. at 141-42, 119 S.Ct. at 1171 (emphasis in original).
 

 The factual basis for an expert’s opinion determines the reliability of the testimony. An unsupported opinion can offer no assistance to the fact finder, and should not be admitted as expert testimony.
 
 Miramon v. Bradley,
 
 96-1872 (La.App. 1st Cir.9/23/97), 701 So.2d 475, 478. The trial court’s inquiry must be tied to the specific facts of the particular case. The abuse of discretion standard applies to the district court’s ultimate conclusion as to whether' to exclude expert witness testimony and to the court’s decisions as to how to determine reliability.
 
 Brown v. City of Madisonville,
 
 07-2104, p. 4 (La.App. 1st Cir.11/24/08), 5 So.3d 874, 879. There is a crucial difference between questioning the methodology employed by an expert witness and questioning the application of that methodology or the ultimate conclusions derived from that application. Only a question of the validity of the methodology employed brings
 
 Daubeit
 
 into play.
 
 MSOF Corp. v. Exxon Corp.,
 
 04-0988 (La.App. 1st Cir.12/22/05), 934 5So.2d 708, 718,
 
 writ denied,
 
 06-1669 (La.10/6/06), 938 So.2d 78. However, if a district court conducts no
 
 Daubert
 
 analysis of any kind, the exclusion of the expert’s evidence without an evaluation of the relevant reliability factors is legal error.
 
 Corkern,
 
 934 So.2d at 107. A summary judgment granted without such an evaluation must be reversed.
 
 Id.
 

 In the matter before us, the Carriers submitted affidavits and deposition testimony from James M. Green, a professional engineer with experience in reconstructing bicycle accidents and with the safety standards applicable to the manufacture, sale, and use of bicycles and other cycling equipment. His testimony was for the purpose of establishing that there was an industry standard governing the sale of bicycle helmets, and that Sears had breached that standard and its duty by failing to provide any “point-of-sale” fitting instructions when the helmet was sold to the Carriers for their child’s use. To establish the basis for his testimony, the Carriers also provided his curriculum vitae, excerpts from numerous publications, and information concerning bicycle safety standards from the National Bicycle Dealers Association.
 

 The Carriers assert that the district court legally erred and abused its discretion by rejecting the expert opinion of Green without conducting a
 
 Daubeyt
 
 analysis. They point out that the transcript of the oral argument on Sears’ motions reveals that the trial court did not utter the words “Green,” “testimony,” or
 
 “Daubert.”
 
 In fact, the court never even stated that the motion in limine was granted. At the conclusion of the arguments, the judge said only:
 

 After a review of the documents, I can’t stretch it that far as to Sears’ duty, I just can’t, it just doesn’t fly for me.
 

 Therefore, I agree with Sears, I believe that the point of sale requirement is not mandated on Sears, they don’t have that duty. Summary judgment is granted.
 

 Having examined the transcript, we concede that the Carriers are correct on this point. Although both parties argued with respect to the basis for Green’s opinion, the judge never stated that he found Green’s testimony to be unreliable or irrelevant, or even that he was granting the motion in limine or excluding Green’s testimony. While we are perplexed by this circumstance, we are forced to conclude
 
 *898
 
 that there was no evaluation or analysis of the
 
 Daubert
 
 factors, as required under the jurisprudence from this court, | (¡the Louisiana Supreme Court, and the United States Supreme Court. This is legal error, and in this case it strikes at the sole issue in Sears’ motion for summary judgment. Sears’ motion for summary judgment pointed out to the court that, other than Green’s testimony, the Carriers had no proof concerning a necessary element of their cause of action, namely, that Sears had a duty to provide point-of-sale fittings of bicycle helmets. It appears that the trial court decided the duty issue without first determining that the expert’s testimony was inadmissible, based on the
 
 Daubert
 
 factors. Accordingly, we must reverse the judgment granting the motion for summary judgment and remand this case to the trial court for further proceedings.
 

 Apparently, this is not the first instance of confusion concerning a trial court’s responsibilities under
 
 Daubert.
 
 The Louisiana legislature recently amended Louisiana Code of Civil Procedure article 1425 to set out exactly what is required from the parties and the court when conducting such a hearing and ruling on the admissibility of an expert’s proffered testimony.
 
 See
 
 2008 La. Acts, No. 787, § 1. The amended article contains the following pertinent provisions:
 

 F. (1) Any party may file a motion for a pretrial hearing to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Articles 702 through 705 of the Louisiana Code of Evidence. The motion shall be filed not later than sixty days prior to trial and shall set forth sufficient allegations showing the necessity for these determinations by the court.
 

 (2)The court shall hold a contradictory hearing and shall rule on the motion not later than thirty days prior to the trial. At the hearing, the court shall consider the qualifications and methodologies of the proposed witness based upon the provisions of Articles 104(A) and 702 through 705 of the Louisiana Code of Evidence. For good cause shown, the court may allow live testimony at the contradictory hearing.
 

 (3) If the ruling of the court is made at the conclusion of the hearing, the court shall recite orally its findings of fact, conclusions of law, and reasons for judgment. If the matter is taken under advisement, the court shall render its ruling and provide written findings of fact, conclusions of law, and reasons for judgment not later than five days after the hearing.
 

 (4) The findings of facts, conclusions of law, and reasons for judgment shall be made part of the record of the proceedings. The findings of facts, conclusions of law, and reasons for judgment shall specifically include and address:
 

 (a) The elements required to be satisfied for a person to testify under Articles 702 through 705 of the Louisiana Code of Evidence.
 

 (b) The evidence presented at the hearing to satisfy the requirements of |7ArticIes 702 through 705 of the Louisiana Code of Evidence at trial.
 

 (c) A decision by the judge as to whether or not a person shall be allowed to testify under Articles 702 through 705 of the Louisiana Code of Evidence at trial.
 

 (d) The reasons of the judge detailing in law and fact why a person shall be allowed or disallowed to testify under Articles 702 through 705 of the Louisiana Code of Evidence.
 

 (5) A ruling of the court pursuant to a hearing held in accordance with the provisions of this Paragraph shall be sub
 
 *899
 
 ject to appellate review as provided by law.
 

 (6) Notwithstanding the time limitations in Subparagraphs (1), (2), and (3) of this Paragraph, by unanimous consent of the parties, and with approval by the court, a motion under this Paragraph may be filed, heard, and ruled upon by the court at any time prior to trial. The ruling by the court on such motion shall include findings of fact, conclusions of law, and reasons for judgment complying with the provisions of Subparagraph (4) of this Paragraph.
 

 The above-cited provision is inapplicable to the case we are reviewing, because it was not effective until January 1, 2009, and the legislature’s intent that it be prospective only is clear.
 
 See
 
 2008 La. Acts, No. 787, § 3. However, we include it to bring it to the attention of the parties and the court and to indicate the type of analysis that, had the trial court provided it in this case, would have allowed this court to evaluate the judgment granting the motion in li-mine. Without even the scantest mention of any of the factors influencing the court’s decision in this case, we must reverse that judgment and the granting of the motion for summary judgment.
 

 CONCLUSION
 

 For the foregoing reasons, the February 11, 2008 judgment of the trial court is reversed and this case is remanded to the trial court for further proceedings. Each party is to bear its own costs of this appeal.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . Blake’s mother initially stated in a deposition that the helmet had been purchased at J.C. Penney’s store. This statement was later revised to indicate the helmet had been bought at Sears.