608 So.2d 226 (1992)
Harold E. CREED
v.
AVONDALE INDUSTRIES, INC.
No. 92-CA-381.
Court of Appeal of Louisiana, Fifth Circuit.
October 27, 1992.
*227 Richard A. Tonry, Michael C. Ginart, Jr., Law Office of Tonry and Ginart, Chalmette, for plaintiff-appellant.
Richard S. Vale, Blue, Williams & Buckley, Metairie, for defendant-appellee.
Before KLIEBERT, C.J., and WICKER and CANNELLA, JJ.
KLIEBERT, Chief Judge.
This is an appeal by the claimant from a judgment of the Office of Workers' Compensation Administration which denied his claim for total disability. For the reasons hereafter stated we affirm.
The demand, filed on February 15, 1990, stated that the dispute occurred as a result of:
"Illness resulted from excessive mental stress and abuse which continued for a number of years. This caused severe nervous system stress and the total disability to perform the duties to continue working. The resulting illness and stress have caused continual dizzy spells, extreme and constant exhaustion, trembling, memory loss, insomnia, migraine headaches and occasional irrational behavior."
and consisted of:
"The letting go of experienced men and replacing them with unexperienced and unsafe men, cover-ups of fraudulent activities, deception and corruption, unnecessary and constant screaming, firing and rehiring three times within one week, working under severe conditions resulted in stress syndrome making me unable to continue working there."
Attached to the claim were two medical reports. One report, dated November 28, 1989, by Dr. Lucas A. DiLeo contained the following pertinent observations:
"Diagnosis: Chronic Stress Syndrome with Hyperfatigue; Extent: Severe, and Agoraphobia. Also Chronic Anxiety Depression Syndrome; Extent: Severe. Highly Clinical Suspect of Cluster Headaches.
* * * * * *
Prognosis: Fair. It is my medical opinion that this patient is totally and permanently disabled and unable to participate in his usual work duties and I do not anticipate that he can participate in any type of gainful employment. It is my professional opinion that patient's employment was the cause of his stressful condition.
* * * * * *
General Comments: Patient is totally and permanently disabled."
The other report, by Dr. Roger Anastasio, stated in part:
"It is my opinion that Mr. Creed has been disabled from a psychiatric (sic) since he stopped working on February 20, 1989, and he continues to be disabled from a psychiatric standpoint presently. At this time I am unable to estimate the length of Mr. Creed's psychiatric disability, but there is a possibility that it may be permanent."
The defendant answered the demand denying that the claimant was disabled and asserting that any disability that he may *228 have was not related to his employment but rather to stressful events in his life, including his family situation.
At the hearing held on June 24, 1991, it was stipulated that the depositions of Drs. Adrian Blotner and Carlos Kronberger, both taken on January 9, 1991, would be introduced as joint exhibits and, further, if the claimant was found to be entitled to compensation, it would be at the maximum rate.
After the hearing and immediately following oral argument the presiding judge rendered oral reasons for judgment in which he made the following statements:
"As I look at Section 1021, dealing with the mental injury mental injury caused by mental stress, it seems to me that the legislature did in fact set forth a higher burden than the mere preponderance of the evidence in trying to prove such a case. Otherwise, there would have been no need for them, as far as I'm concerned, to use clear and convincing evidence as a standard. Because preponderance of the evidence is generally the standard that you use in the civil cases. Additionally, under Subsection D of 1021, it refers to the Diagnostic and Statistic Manual of Mental Disorders as the criteria. Well, we dealt with that here, too. I have serious problems in this case in trying to find that the claimant's case was proven by clear and convincing evidence. There's been some serious questions. I reviewed thoroughly the extensive medical records as counsel just alluded to, that goes back to the '70s where Mr. Creed was having various and sundry problems of the nature that's very similar to the problems that he's presently having. There's some serious question as to whether or not his problem is organically related; organically caused or whether or not it was in fact caused by a job related problem. There was some very serious allegations made against Mr. Blanchard in terms of his relationship with Mr. Creed. However, he testified that at the conclusion of his testimony, I was convinced that he was not as bad a person as testimony had tended to portray him. As a matter of fact, it seemed to me that he and Mr. Creed had a very cordial relationship that naturally would to some degree change outside of the work force or change once they got into the work force. Well, that's understandable, to some degree. So, again, there's a serious question as to whether or not it was organically related. Even if we assume that his problem was not in fact caused by his present problem, was not caused by some organic problem, I don't see where in this case the plaintiff proved their case by clear and convincing evidence. I think Sparks versus Tulane University did suggest that you must point to some specific instances, which brought about the problem. In this case, I just didn't see it. So, in view of the totality of evidence, after looking at the witness, listening to the witnesses, as unfortunate as it may seem, that the plaintiff did not satisfy the burden of proof in this case, and therefore, the claim of the plaintiff would be rejected. Each side will pay their own costs."
Counsel for appellant has assigned error on the part of the hearing judge in requiring that plaintiff prove his case by "clear and convincing" evidence rather than by a "preponderance" of the evidence, it being his contention that as the date of the inception of his client's disability was February 20, 1989 and that as the effective date of LSA-R.S. 23:1021(7)(b) (hereinafter quoted) was January 1, 1990, the latter statute has no applicability to the present cause of action which should be governed solely by the holding of the Supreme Court in Sparks v. Tulane Medical Center Hospital and Clinic, 546 So.2d 138 (La.1989). We do not agree.
The narrow issue presented by the Sparks case was "whether a mental injury induced by mental stress is compensable when it is caused by a significant employment incident and it is not accompanied by any apparent signs of physical trauma." Sparks, supra, at page 139. In resolving the question, the Court held:
"In summary, a mental injury induced by mental stress that is caused by an unexpected *229 sudden or violent employment-related event may be compensable under the Act." Id. at page 147.
Soon after this decision was handed down, the 1989 Legislature amended the applicable provisions of the Compensation Act so as to comport with the above holding, the amendment, LSA-R.S. 23:1021(7)(b), now providing as follows:
"Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence."
Obviously, the holding in the Sparks case and the wording of the amended statute are essentially the same except for the burden of proof element; only a preponderance of the evidence was required of plaintiff at the time of the Sparks holding, whereas, beginning with January 1, 1990, the effective date of the amendment to the statute, he or she is required to present clear and convincing evidence in order to recover. The question presented, therefore, is whether the change in the burden of proof required by the amendment should be applied retroactively. We hold it should be.
The Louisiana legislation on the retroactivity of laws is found in R.C.C. Art. 6, which provides that:
"In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."
The above article of our Civil Code requires, first, an inquiry as to whether the statute under examination contains a "legislative expression to the contrary" or, in other words, whether the statute itself expresses the will of the legislature that it be applied either retroactively or prospectively only. Here, the statute (Act 454 of 1989, Sec. 13) recites only that it "shall become effective on January 1, 1990." It is thus silent as to whether its provisions are to be retroactively or prospectively applied with the result that the resolution of the question depends upon the classification of the legislation.
In Ardoin v. Hartford Accident and Indemnity Co., 360 So.2d 1331 (La.1978), the Supreme Court was presented with the question of whether or not a statute establishing a burden of proof in malpractice actions should be given retrospective effect. The Court noted that the statute was an interpretive one which did not establish new rights and duties but merely determined the meaning of existing laws. Specifically, it was held that:
"Applying these principles to La.R.S. 9:2794, we conclude that the statute should be given retrospective effect. To the extent that the statute establishes a burden of proof in malpractice actions, it clearly should be characterized as procedural and therefore applied to pre-existing facts and relations..... Accordingly, La.R.S. 9:2794 is an interpretive statute which does not establish new rights and duties but merely determines the meaning of existing laws and may thus be applied to facts occurring prior to its promulgation."
(supra, at page 1339)
Clearly, LSA-R.S. 23:1021(7)(b), like the statute considered in the Ardoin case, is procedural in nature. The amendment can only be viewed as interpretive. It does not establish a right, but merely puts in statutory form the holding of the Sparks case and, in addition, provides for the burden of proof applicable to such claims. It is thus procedural in nature and it was not error on the part of the hearing officer to apply its provisions to a cause of action which occurred before its effective date of January 1, 1990.
Having determined that the burden of proof requirement applied below was correct, we turn to the record to determine whether error was committed in concluding that the claimant had not proven his case.
*230 The claimant, Mr. Creed, testified that he was 58 years of age, had worked for Avondale since 1962 and had risen from the position of shipfitter to that of crane general foreman in the crane department. He stated that he left the employ of Avondale in February of 1989 and when asked why he left, answered:
"A Because I couldn'tI couldn't make it. There's no question. They wanted me to go nights, I knew I couldn't spend that many hours in the daytime and nights. And I couldn'tI knew I couldn't do it. I could barely hardly make it through the day."
* * * * * *
"A Well, I couldn't stay up all day, I couldn't sleep in the daytime.
Q Why not?
A Well, there's no way can you sleep in the daytime and go out there at night. I'd go out there in the morning at Avondale in the mornings, about 3 o'clock, I couldn't make it any further."
When questioned as to what worried him during this period, he recited instances of firing of employees as far back as 1978 and the fact that he was fired by a Mr. Blanchard on three occasions. Not only was he concerned about being berated and fired, he was also concerned about safety and cover-ups, describing the cranes used by the company as being unsafe. He accused the company of lying regarding accidents and deaths, and that it bothered him and that "probably ... a combination of everything; and being physically unable to make it" caused him to leave when he did.
On cross-examination, when asked whether the real reason he left was because he was being switched from days to nights, he answered in the affirmative. He further testified as follows:
"Q Were you seeing any doctors beside Dr. DiLeo at the time that you left Avondale?
A No, that's all.
Q Did any doctors recommend that you should leave Avondale when you did because
A No.
Q it was stressing you?
A No. That was never discussed with any doctor.
Q It was your decision after talking with Mr. Hill and Mr. Jackson about being shifted to the night, is that right?
A Right."
Mrs. Shirley Marie Creed testified that she and Mr. Creed had been married over seventeen years although, unbeknown to her at the time, he had secured a divorce when they had separated for a brief time in 1979. She stated that whereas he had always been an outdoorsman who liked hunting, fishing and golf, as he became more nervous and tense, his pursuit of these activities tapered off to the point where he lost interest in them completely. On crossexamination, when asked about why her husband quit his job when he was transferred to the night shift, she testified that even though the work would be lighter, he knew he could not change "his biological clock" so as to stay awake all night.
A Mr. C.J. Mangano testified on behalf of the plaintiff. This gentlemen worked with Mr. Creed for some twenty years and had played golf with him as well. He stated that Creed had stopped playing golf while still working for Avondale. The only other pertinent matter to which he could testify was that he thought Mr. Creed was worried about his job.
Also testifying on behalf of Mr. Creed was Mr. Nelson J. Laborde, who testified that he was familiar with the relationship that existed between Mr. Creed and Mr. Blanchard, the company vice-president referred to by plaintiff as having fired him three times. This witness could only remember one occasion when Creed had been fired by Blanchard and it was he, Laborde, who was directed to call Creed back to work the next day. He also stated that Blanchard would yell at him but he "hollered loud at all of us." On cross-examination he stated quite frankly that the three of them had coffee together at a cafe a quarter of a mile from where they worked and continued doing so until Blanchard left *231 the company. He described their conversations as sociable. Any harassment or yelling on the part of Blanchard directed to plaintiff was no different from what Blanchard did to him.
The two professional witnesses who testified on behalf of the plaintiff were Drs. DiLeo and Anastasio, whose reports were attached to the plaintiff's claim as indicated at the outset of this opinion.
Dr. DiLeo, a general practitioner, traced his treatment of the plaintiff beginning with the year 1987 when he first consulted him, at which time he had a history of hypoglycemia, a weight problem and a male climacteric condition. By 1988, he found him to have tension and vascular headaches. Thinking that he had possible psychiatric problems, he referred him to Dr. Stanley Blotner, a psychiatrist. As of his examination of July 20, 1988 and August 26, 1988, he diagnosed his condition as chronic stress syndrome which rendered him "totally disabled and unable to do his usual work activities at that particular time." It was his impression that the cause of the condition was "occupational stress."
Dr. Roger Anastasio, psychiatrist, saw plaintiff after he had been referred to him by Dr. DiLeo and after he had been seen by Dr. Blotner. His diagnosis was that of a "significant anxiety disorder," which though not in itself a disabling diagnosis, in Mr. Creed's case the symptoms of which were of such severity that he did not think he was able to work. This was the doctor's impression when he first saw Mr. Creed on November 6, 1989 as well as his examination a week before the hearing. When asked what the disorder was attributable to, the record reveals the following:
"A Well, I have to rely on the history for that, as presented to me by Mr. Creed. He told me that his employment situation at Avondale was extremely stressful to him; and that he over the years of his employment became aware of more and more of these problems to the point that he really couldn't function adequately. It was also affecting his sleep.
Q Did he mention any of the particular problems that he had with his employment?
A He mentioned very stressful interactions with his supervisor. He was on occasion terminated for no reason that he was aware of. He said that at times his supervisor would go into his office and throw junk in it; take his belongings and effects in the office and scatter them about; things of this nature. It seemed to me to be rather extreme, but again, I have no independent verification of that, that entirely from the history that Mr. Creed gave me."
Apparently, Dr. Adrian Blotner, psychiatrist, first saw Mr. Creed on June 21, 1988 as an outpatient and later, on August 29, 1989 in connection with a coroner's commitment at East Jefferson Hospital. His original diagnosis was of organic brain dysfunction. He could draw no conclusion as to whether the problems which led to his commitment were related to his employment with Avondale or his family. He did, however, feel that his condition, whatever its cause, rendered him totally and permanently disabled.
The defense presented only two witnesses, one lay and one expert. The lay witness was the Mr. Edward A. Blanchard, referred to in previous testimony. This gentleman testified that he had worked for Avondale for 46 years and held the title of Vice-President of Production when he left. He testified as to the coffee drinking association with Mr. Creed and others, which he said went on for years. He testified to lending Mr. Creed money ($3500.00) at the time the latter secured his divorce from his wife and stated that it was paid back with interest. In general he denied Mr. Creed's testimony with respect to harassment, firings, and cover-ups. He saw less and less of Mr. Creed as the years went by and saw no difference in Mr. Creed when he himself left the company in June of 1988.
The expert, Dr. Richard Roniger, M.D., psychiatrist, examined Mr. Creed for an evaluation in September of 1990. At that time he had previously gone over letters of *232 Drs. Blotner, Anastasio, and DiLeo as well as the depositions of Drs. Kronberger and DiLeo. In Dr. Roniger's opinion, the information reported by Dr. Blotner referring to an abnormal CT-scan and abnormal MRI proved that Mr. Creed was not suffering from a stress-related disability, but rather that "the man had a stroke." His testimony on this point is as follows:
"A In layman's terms, it means over a great number of years there were gradually narrowing arteries in the man's brain that at some point in time narrowed to the point of cutting off the oxygen flow and parts of the brain were deprived of oxygen and died, apparently not significant enough to cause like a paralysis; weak limb or an absence of movement in a limb, but enough to account for symptoms such as headache and dizziness and the variety of things that this man presented with over the years.
Q So, its your opinion that the symptoms that Mr. Creed has continued to complain offatigue, getting overheated easily, headaches, that sort of thingare related to this physical problem that he has had?
A That's all very consistent with that, yes.
Q All right. And you do not believe that that's related to any on-the-job stress?
A That has nothing to do with stress. That's a generally a genetic determined thing that's made worse by diet, cigarette smoking and so forth."
The record contains obvious and important conflicts in the testimony of both lay and experts. The hearing officer chose not to resolve these conflicts in favor of the claimant and we simply cannot conclude that there was error in his having done so. Finding no error in either law or fact in the judgment appealed from, the same is affirmed.
AFFIRMED.