J^NORRIS, Chief Judge.
This is a worker compensation case that arose before the creation of the WCJ system. The employer, General Motors, appeals a judgment of the District Court finding the claimant, Mary Ann McKnight, to be temporarily, totally disabled on physical and emotional grounds. For the reasons expressed, we affirm.

Factual background

Ms. McKnight went to work for GM at its Shreveport plant in 1983. Initially she worked the night shift, off-line. She had no problems, physical or mental, until she moved to the day shift in July 1984, taking an assembly line job installing transmission bolts. This involved using a torque gun. She testified that she injured her arm, developing tendinitis from flipping the torque gun. After two months the plant doctor, Dr. Osetinsky, restricted her work. In the ensuing months, labor and management moved her to various jobs, including one on the motor line. During this time frame, however, she was usually working in pain.
Ms. McKnight testified that when she was moving from job to job and trying to work in pain, she began to suffer stress and anxiety that she might be fired because she could not perform her job properly. She testified that her supervisor on the motor line, Gary Burcham, was insensitive to her complaints of pain and watched her more closely than other employees. She also testified that he threatened her with termination within 30 days if she did not improve her speed. She described his conduct as “harassment.” She also related suffering from panic attacks, especially on her morning drives to GM.
She also testified, however, that from January 1985 through April 1986, she was on the U-bolt line; although she was “real stressed” during this time, she had no significant physical problems until April 1986, when her arm pain recurred. This time, however, it was not just in the elbow, but also shooting up into her neck Land shoulder. Dr. Osetinsky gave her anti-inflammatories and by August he advised her to see a specialist.
In August 1986 she went to Dr. Ragan Green, an orthopedist. He diagnosed epi-condylitis, cervical disc disease in her neck, and declared her disabled. She went off work in August 1986, drawing compensation. In early 1987 Dr. Green assessed a five percent permanent disability of her right arm; in October 1987 he released her to resume working, but with such restrictions (20 pounds maximum lifting, no twisting of the right arm) that GM could find no suitable jobs. Feeling that conservative treatment was not succeeding, Dr. Green operated on her arm (a modified Bosworth procedure) in March 1988. According .to Ms. McKnight, this was not successful, as she still has “real bad shooting pains” in her elbow. Dr. Green stated in deposition, in March 1993, that Ms. McKnight is still under the 1987 restrictions.
Ms. McKnight also testified that while she was suffering with arm and neck pain, and struggling to work, her anxiety and *456 depression had begun to recur. Starting in August 1986, when she was not working, she was tormented not only by the pain but by the fear that she would never work again. In 1986 she began seeing a psychiatrist, Dr. Campbell, who put her on Prozac and Xanax. He related her emotional problems to the job at GM, since she had never had them before. In August 1988, after Dr. Campbell’s retirement, Ms. McKnight went to another psychiatrist, Dr. Clifton Dopson, who also found depression and anxiety. He related this to her chronic pain and difficulties at work, recurrent injuries, and attempts to work before her arm had fully healed. He placed her on an assortment of drugs but ultimately returned her to Prozac and Xanax.
Finally, in October 1988, GM called her back to work. Personnel, the union representative and Dr. Osetinsky had decided she could work the axle schedule | aline without exceeding restrictions; Dr. Green had not been consulted. She reported to work but almost immediately re-injured her arm and began having pain in her neck, back and legs. She reported to Dr. Osetinsky, who bandaged her up and told her to keep trying. She could not keep up with the line and, at one point, got the schedule out of order, causing the line to stop. She testified that her supervisor, someone named Bill, accused her of mixing up axles on purpose; calling her into his office, he told her the job was too hard for her, that the next day she would be on the line by herself, and if she messed up one more time, she’d “had it.” Bill was not called to testify. Ms. McKnight also testified that her former supervisor, Gary Burcham, stood around and intimidated her, but he denied this, saying he was stationed in another part of the plant.
Ms. McKnight testified that this confrontation made her almost hysterical and gave her a panic attack. She went to Dr. Green, her orthopedist. He diagnosed a panic attack and advised her not to return to the axle schedule job as it was too hard for her. He also instructed her to see her psychiatrist.
She went to Dr. Dopson, who advised her to check into Humana Hospital Brent-wood, a mental health facility. She did so; the admitting physician noted that chronic arm and neck pain, together with inability to work, had prompted the episode of major depression. She remained in Brent-wood for six weeks. She has never returned to any kind of work since her last Friday,.October 8,1988, at GM.
GM’s compensation administrator, Ms. Hine, testified that neither Dr. Dopson nor Brentwood initially attributed her depression to work, so GM did not treat this as a comp claim. Instead, Ms. McKnight drew extended disability benefits of about $800 a month from October 1988 through December 1989. She then converted to sick leave of about $300 a week, part of which is paid by comp.
| /¡Procedural background
Pursuant to the former OWC procedure, GM submitted Ms. McKnight’s claim for temporary, total disability to a referee. GM accepted the referee’s recommendation in June 1989. Ms. McKnight disagreed, however, and elected to file the instant suit in August 1989.
Trial was held over two days in March 1993. Ms. McKnight testified that she is still under the care of Drs. Green and Dopson, requiring frequent cortisone shots for her arm and back pain and daily doses of Prozac and Xanax. She said she would like to work, but doesn’t think she can do any jobs at GM. She added that in her current state, she is virtually a recluse. She admitted that between 1986 and 1988 there were other major stressors in her life (death of her mother and aunt, hysterectomy, family and financial issues). However, she sincerely believed the stress of working at GM, including fear that she could not do her job, and harassment by her supervisors, caused her to become incapacitated. Gary Burcham, her former supervisor, denied that he threatened or *457 harassed her, but admitted that supervisors have to “watch” their line workers. Both Burcham and Ms. Hine testified that under the union contract, it was impossible for anyone to be discharged for low production within a 30-day time frame. Although the testimony was extensive, the District Court held the record open for the admission of medical evidence.
A brief hearing was conducted in April 1996, at which time Ms. McKnight introduced the medical depositions. Dr. Green, the orthopedist, was certain that work caused her elbow problems, but was equivocal about the source of her neck and back pain. He concluded that from an orthopedic standpoint, she was not disabled, but she could not do any work that involved torquing her right arm. Dr. Dopson, her psychiatrist, testified that she still suffers from major depression, |spanic disorder and generalized anxiety. He declared her totally disabled because of depression. He recognized that other stress factors were present, but these were of a chronic nature and had never caused symptoms. He concluded that Ms. McKnight’s psychiatric problems were related to her job at GM.
The District Court rendered an opinion in April 1998. At the outset it declined to apply the 1990 amendment to the mental injury statute, La. R.S. 23:1021(7), which imposed a burden of clear and convincing evidence. Prior to the amendment, this statute made no special provision for work-related mental injury. Instead, the court applied Sparks v. Tulane Medical Center, 546 So.2d 138 (La.1989), which held a mental injury claimant to the general standard of a preponderance of the evidence. The court then recapitulated the record evidence, concluding that because of both her orthopedic and psychiatric conditions, Ms. McKnight is temporarily, totally disabled. The court finally denied the claim for penalties and attorney fees. The judgment, signed January 4, 1999, awarded benefits of $248.00 a week beginning October 8, 1988, subject to the statutory maximum of weeks payable and credit for extended disability payments.[1]
GM has appealed suspensively, advancing three assignments of error.

Discussion: Burden of proof

By its second assignment of error GM urges the District Court erred in failing to apply the amended version of La. R.S. 23:1021(7), effective January 1, 1990, which requires that mental injury claimants prove work-related mental injury by clear and convincing evidence. In support it cites Ardoin v. Hartford Accident & Indem. Co., 360 So.2d 1331 (La.1978), and Creed v. Avondale Indus., Inc., 608 So.2d 226 (La.App. 5 Cir.1992). This argument has merit.
| (¡Prior to January 1, 1990, the compensation act’s definition of “injury” made no provision for mental injuries. R.S. 23:1021(7) only provided:
(7) “Injury” and “personal injuries” include only injuries-by violence to the physical structure of the body and such diseases or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted.
In Sparks, supra, the Supreme Court found that despite the restrictive language of this section, courts had generally allowed recovery for mental injury or illness secondary to physical injury sustained in a work-related accident. Further interpreting Section 1021(7), the court held that mental injury induced by mental stress was indeed compensable upon proof, by a preponderance of the evidence, that the plaintiff sustained mental injury that arose from a sudden and unexpected employment accident.
Subsequent to Sparks, the legislature amended R.S. 23:1021(7). 1989 La. Acts, *458 No. 454. In addition to the paragraph quoted above, it now also provides:
(b) Mental injury caused by mental stress. Mental injury or illness resulting from work-related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence.
(c) Mental injury caused by physical injury. A mental injury or illness caused by a physical injury to the employee’s body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.
(d) No mental injury or illness shall be compensable under either Subpara-graph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
17Statutes that establish a burden of proof are procedural in nature, and thus subject to retrospective application. Ardoin v. Hartford Accident & Indem. Co., supra; Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724. One court has specifically held that Section 1021(7)(b) is retroactive. Creed v. Avondale Indus., Inc., supra. The Supreme Court has implicitly approved that conclusion. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992), fn. 25. Under the circumstances, we are constrained to hold that the District Court erred in failing to apply the amended version of 1021(7)(b) to this case.[2] We will therefore review the evidence according to the clear and convincing standard.

Accident or injury

By its first assignment of error GM urges the District' Court erred in finding that Ms. McKnight sustained an accident or injury. GM contends that she made no showing that her condition resulted from sudden, unexpected and extraordinary stress related to employment, but rather arose from the general conditions of employment at GM. Even in Sparks, supra, the Supreme Court warned:
We emphasize, however, that a mere showing that a mental injury was related to general conditions of employment, or to incidents occurring over an extended period of time, is not enough to entitled the claimant to compensation. The mental injury must be precipitated by an accident, i.e., an unexpected and unforeseen event that occurs suddenly or violently.
(Emphasis in original.) In a footnote, the court elaborated:
[A]n employee’s subjective assertion that he had a sudden onset of symptoms of mental injury, such as depression or anxiety, is not alone sufficient to show that an accident occurred. The employee must be able to point to a discernible employment-related event which caused the mental injury, an event separate and apart from the onset of the symptoms of that mental injury.
LGM concludes that Ms. McKnight made no showing to satisfy the requirements of Section 1021(1) and Sparks, supra.
*459 Worker compensation is predicated on personal injury by accident arising out of and in the course of the employment. La. R.S. 23:1031 A. In general, the claimant must prove the occurrence of a work-related accident 'by a preponderance of the evidence. Bruno v. Harbert Int’l Inc., supra; Cubley v. Steel Forgings Inc., 26,507 (La.App. 2 Cir. 1/25/95), 649 So.2d 117. A mental injury claimant, however, must prove by clear and convincing evidence that his disabling condition resulted from physical injury or the type of mental stress contemplated by the statute. Charles v. South Cent. Industries, 96-0883 (La.11/25/96), 683 So.2d 706. The District Court’s factual findings are subject to the manifest error rule. Id. The compensation law is liberally construed to afford coverage. Coats v. American Tel. & Tel., 95-2670 (La.10/25/96), 681 So.2d 1243, and citations therein.
This record shows that within weeks of beginning the transmission bolt job, Ms. McKnight injured her right arm; both Dr. Osetinsky, the company doctor, and Dr. Green, the treating orthopedist, directly attributed this to her work. In the ensuing months, before her problem was completely resolved, management and labor moved her from job to job. Unfortunately, her pain was such that she could not perform them (other than the U-bolt job); according to Ms. McKnight, physical pain, the stress of working in pain, and fear that she could not perform, led to anxiety, panic attacks, and ultimately major depression. The District Court was not plainly wrong to find that her physical and mental condition was work-related. This evidence supports the District Court’s finding of a work-related injury as defined in 1021(1) and an element of mental injury under 1021(7)(c).
Moreover, the record supports the finding of á “sudden, unexpected, and extraordinary stress” occurring on the afternoon of Ms. McKnight’s final day of 19work. On that occasion her supervisor confronted her and threatened her with work conditions with which she knew she could not comply. Notably, the supervisor was not called to refute Ms. McKnight’s account of the incident. Moreover, there is no showing that her claims are “nebulous” or “easily feigned.” Charles v. South Cent. Indus., supra. The confrontation qualifies as sudden, unexpected and extraordinary stress, an element of 1021(7)(b).

Disability

By its third assignment of error GM urges the District Court was plainly wrong in finding that Ms. McKnight was unable to return to work because of her work-related condition. In support, it cites the deposition testimony of Dr. Green, the treating orthopedist, who concluded that she was “capable of doing many, many things with the exception of the repetitive use of the right arm.” It further cites the deposition testimony of Dr. Osetinsky, who felt that the axle schedule job on which she was placed for one week in October 1988 was completely within the restrictions fixed by Dr. Green. In short, GM contends the District Court was plainly wrong to find that her orthopedic restrictions prevented her from engaging in any employment, as required by La. R.S. 23:1221(1).
The District Court’s factual findings are subject to the manifest error rule. Charles v. South Cent. Industries, supra. Under this rule, when the District Court is confronted with two permissible views of the evidence, his choice between them can virtually never be plainly wrong. Stobart v. State, 617 So.2d 880 (La.1993).
The District Court’s written opinion contains an extensive recapitulation of the evidence, both by live witnesses and medical depositions. Notably, the court accepted and adopted Dr. Dopson’s conclusion that because of major depression, Ms. McKnight is currently unable to engage in any employment. This detail is conspicuously absent from GM’s brief, but it figures prominently in the District ImCourt’s finding that her physical condition, coupled *460 with her mental condition, caused the disability. Dr. Dopson testified that her depression was “directly related” to her job injury and re-injury. Dep. (8/17/90), p. 40. He elaborated:
[S]he was rushed into learning this job, and she managed to get it done, but it wasn’t too long before she got injured. And her perception is that the foreman there just kind of kept trying to get her to go back over and over and over again to the thing that was beyond her restrictions, and that she’d never had a chance to heal before she was given some new job that ended up causing more injury. Dep. (8/17/90), p. 13.
He also directly attributed the “mental-mental” aspect of her condition to her work at GM, and discounted other potential causes by noting she has managed to go through “other stressful and trying times * * * and yet not develop symptoms of major depression.” Dep. (8/17/90), p. 12.
Dr. Dopson’s finding are uncontradicted, and clearly and convincingly show that Ms. McKnight is disabled from performing any work.[3] We certainly will not overlook them in favor of Dr. Green’s limited, orthopedic prognosis. Stobart v. State, supra. In light of Dr. Dopson’s expert opinion, and Ms. McKnight’s testimony, the record evidence shows work-related mental injury by clear and convincing evidence.
This assignment lacks merit.

Conclusion

For the reasons expressed, the judgment is affirmed. Costs are assessed to the appellant, General Motors Corp.
AFFIRMED.

. Pursuant to order of this court, an amended judgment was rendered on December 10, 1999, in conformity with La. C.C.P. art.1911 and Louisiana Paving Co. v. St. Charles Parish Public Schools, 593 So.2d 892 (La.App. 5 Cir.1992).

. This writer notes that courts have occasionally denied retroactive effect to statutes that raise the burden of proof in comp cases. Bradley v. Morton Thiokol Inc., 27,411 (La.App. 2 Cir. 9/29/95), 661 So.2d 691; Vernon v. Wade Corr. Inst., 26,053 (La.App. 2 Cir. 8/19/94), 642 So.2d 684. The rationale is that the parties’ rights and obligations are fixed at the time of injury. Bruno v. Harbert Int’l Inc., 593 So.2d 357 (La.1992). These cases, however, predate the Supreme Court’s latest pronouncement in Sudwischer, supra.

. GM has not contended that the diagnosis of major depression, panic disorder and generalized anxiety disorder fails to meet the criteria of the DSM. R.S. 23:1021(7)(d).