WINDHORST, J.
Appellant, Dale Anthony Hunter ("Mr. Hunter" or "plaintiff"), seeks review of the jury verdict, in his favor and against appellees, Michael Terrebonne ("Mr. Terrebonne") and ANPAC Louisiana Insurance Company ("ANPAC"), awarding him $35,000.00 in general damages and $280.00 for past medical expenses. For the following reasons, we affirm the jury verdict.
FACTS AND PROCEDURAL HISTORY
On July 14, 2012, Mr. Hunter and Mr. Terrebonne played golf together with a foursome at the Avondale TPC Golf Course in Jefferson Parish, Louisiana. After making a bad shot, Mr. Terrebonne got upset and threw his golf club. The golf club flew through the air, sailed off to the left, and hit Mr. Hunter above his right knee on the front right portion of his thigh. Although Mr. Hunter initially fell to the ground in pain after the incident, he was able to finish playing the remaining fourteen holes of golf.
Mr. Hunter filed suit against Mr. Terrebonne and his liability insurer, ANPAC, alleging that he sustained serious injuries to his "right leg, right thigh, right knee, *996 right calf, right lower extremity and other serious injuries to his mind and body." Mr. Hunter sought damages for pain and suffering, medical expenses, loss of income, and loss of earning capacity. The case proceeded to trial.
At trial, Mr. Hunter and his wife testified that the day after the incident, he was in severe pain, his entire leg was severely bruised, and that he could barely walk. Plaintiff, however, did not seek medical treatment until a few days after the trauma at an urgent care facility. The doctor at this facility told him he had suffered a trauma and suggested he have it examined by his regular doctor. About two weeks after the incident, on August 1, 2012, Mr. Hunter saw his regular doctor, Dr. Daniel Gallagher, an orthopedic surgeon.
Prior to this incident, Dr. Gallagher had treated plaintiff since at least 2006 for left knee pain caused by chronic tendonitis and since 2009 for right knee pain caused by arthritis. Medical records indicate that in 2009, Mr. Hunter's right knee had signs of a degenerative meniscus, which means it was not in normal condition. Dr. Gallagher's deposition was introduced into evidence at trial.
Dr. Gallagher testified that, on August 1, 2012, he found, based on his examination Mr. Hunter's right knee, that it was "basically the same" as during previous visits and that, although there was tenderness, there was no indication of a meniscus tear in the right knee at this visit. Medical records from this visit indicate Mr. Hunter had right knee pain, right thigh pain and swelling and ecchymosis in the right thigh. Dr. Gallagher testified that he thought Mr. Hunter's injury was "simply a contusion from being struck" and that this "was the cause of his thigh and knee pain."
Soon after Mr. Hunter saw Dr. Gallagher, Hurricane Isaac struck the New Orleans area, and the evidence showed that Mr. Hunter had to prepare his home for the hurricane. According to medical records, after the hurricane, Mr. Hunter had an MRI and saw Dr. Gallagher again on September 10, 2012. At this visit, Mr. Hunter told Dr. Gallagher "he had increased pain and swelling in the right knee with hurricane activity." Plaintiff's first post-Isaac examination did reveal new findings, including more tenderness and a positive McMurray test, which is used to test for damage or tears to the meniscus. The MRI showed a ligament strain and a medial meniscus tear which had not been there before.
As to whether the golf trauma aggravated or was related to the arthritis and the tear, Dr. Gallagher testified as follows: "It's hard to say. When you have a direct blow to the body, the body reacts to that. And what I would picture would be some sort of a twisting motion to the knee in reaction to being struck or trying to avoid being struck. That twisting motion could have been what caused the degenerative meniscus to finally tear and flare up and aggravate the preexisting arthritis as well." Dr. Gallagher also testified that the hurricane preparation activity could have caused a meniscus tear if he suffered a twisting motion while working. Dr. Gallagher performed surgery on Mr. Hunter's knee on October 2, 2012.
In February 2013, Dr. Gallagher referred Mr. Hunter to Dr. Timothy Finney, a sports medicine specialist, because his knee was not improving. Dr. Finney testified that he thought the meniscus tear was caused by the golf injury because the MRI from before this incident and after this incident changed in that the MRI showed a meniscus tear after the golf incident. He also testified that the direct blow didn't cause the meniscus tear, but he thought Mr. Hunter reported stumbling and twisting, and that a twisting injury can usually *997 cause a meniscus tear. In addition, Dr. Finney testified that the hurricane preparation activity could also cause a meniscus tear. Although Dr. Finney believed, based on information available to him, that the golf trauma caused the meniscus tear, he further testified that Mr. Hunter's arthritic knee condition was ongoing, that the golf club aggravated it, and that not all of Mr. Hunter's ongoing knee problems were related to that incident.
Two eyewitnesses to the golf incident testified at trial. When questioned about how Mr. Hunter fell after being hit by the golf club, Mr. Errol Martin testified that he fell to the back and to the side and then laid on his back. In this regard, Mr. Barry Thibodeaux also testified that after being hit by the club, Mr. Hunter kind of laid back on his back and that he would not classify it as a fall.
After a trial, the jury concluded that Mr. Terrebonne's conduct caused injury to Mr. Hunter and awarded Mr. Hunter $280.00 in medical expenses and $35,000 in general damages. The jury declined to award damages for future medical expenses, lost wages or loss of earning capacity. Judgment was entered in accordance with the jury interrogatories. Mr. Hunter filed a motion for judgment notwithstanding the verdict, which the trial court denied. Mr. Hunter now appeals, contending the jury erred in failing to award all of his past medical expenses, future medical expenses, lost wages, loss of earning capacity and an abusively low amount of general damages. For the following reasons, we affirm the jury verdict.
LAW AND ANALYSIS
Medical Expenses
Mr. Hunter contends that there is no reasonable basis for the jury's award of $280.00 in special damages for past medical expenses given that he submitted past medical expenses totaling $66,812.94 for injuries caused by the golf club trauma. The defense asserts that Mr. Hunter gave inconsistent accounts of his own alleged injuries, and that the jury awarded only those believed to be caused by the golf trauma, namely those to the right thigh and not the right knee. Based on the following, we affirm the jury's medical expenses award.
In a personal injury suit, the plaintiff bears the burden of proving a causal connection between the accident and the alleged injuries. Stevenson v. Serth, 14-846 (La. App. 5 Cir. 3/25/15), 169 So.3d 612, 615, citing Stoll v. Allstate Ins. Co. , 11-1006, (La. 5/8/12), 95 So.3d 1089, 1095. The test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved, through medical testimony, that it was more probable than not that the accident caused the subsequent injuries. Mart v. Hill , 505 So.2d 1120, 1127-1128 (La. 1987).
In making conclusions, the factfinder is not bound to accept a plaintiff's perception, or any witness' perception, of the nature and extent of plaintiff's injuries. Ladner v. Gov't Employees' Insurance Co ., 08-0323 (La. App. 4 Cir. 10/8/08), 992 So.2d 1098, 1102, writ denied , 08-2864 (La. 2/6/09), 999 So.2d 783. The factfinder can reject all of the testimony of any witness or may accept part and reject part of a witness' testimony. Stevenson, 169 So.3d at 616. When findings are based on credibility determinations, the manifest error or clearly wrong standard applies and demands great deference to the factfinder's conclusions, for only the factfinder can be aware of the variations in demeanor and tone that bear so heavily on the veracity of the witness' testimony. Id.
*998 Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, where conflict exists in the testimony. Purvis v. Jefferson Par. Hosp. Serv., 16-434 (La. App. 5 Cir. 12/21/16), 209 So.3d 363, 372-73, citing Goudia v. Mann, 11-960 (La. App. 5 Cir. 5/22/12), 98 So.3d 364, 372, writ denied, 12-1423 (La. 10/8/12), 99 So.3d 1007. The factfinder evaluates the credibility of both expert and lay witnesses to determine the most credible evidence. Id.
Medical records indicate plaintiff first sought medical evaluation for the golf trauma to his right thigh a few days after the trauma from an urgent care facility, and then saw his regular doctor, Dr. Gallagher, approximately two weeks later. Prior to this incident, Dr. Gallagher had treated plaintiff for right knee pain since 2009. Dr. Gallagher testified that at the first visit following the golf incident, plaintiff's right knee was "basically the same" as during previous visits and that there was no indication of a meniscus tear in the right knee at this visit.
At trial, the defense argued that the meniscus tear to plaintiff's knee was caused by his hurricane preparation work. Dr. Gallagher first examined plaintiff after the golf trauma on August 1, 2012. Soon thereafter, Hurricane Isaac struck the area, and plaintiff had to prepare his home for the hurricane. According to medical records, plaintiff saw Dr. Gallagher again after the hurricane and told Dr. Gallagher he had increased knee symptoms after the hurricane. Indeed, plaintiff's first post-Isaac examination showed new findings, including more tenderness and a positive McMurray test, which is used to test for damage or tears to the meniscus. Both medical experts, Dr. Gallagher and Dr. Finley, testified that the hurricane activity could cause a meniscus tear.
Further, it can be concluded from the record that the jury could have questioned some of plaintiff's testimony. The medical evidence established that for the golf incident to cause a meniscus tear, plaintiff would have had to suffer a twisting type injury, and not just a direct injury. Although plaintiff testified at trial that he suffered a violent twisting injury, he did not describe it as twisting in his deposition. In addition, the eyewitnesses who testified at trial did not describe any twisting motion by plaintiff when he fell.
Moreover, both medical experts testified that given plaintiff's knee condition before the golf incident, he likely would have suffered from knee problems regardless of the golf trauma. Specifically, the medical records showed that plaintiff had a history of arthritis in his right knee and degeneration of the meniscus dating back to 2009. The medical testimony indicated that plaintiff's ongoing arthritic process continually progressed over time and required extensive treatment, while the golf trauma caused a short term injury.
Based on the testimony and evidence, reasonable persons could reach different conclusions as to whether the golf incident caused the meniscus tear to plaintiff's right knee or only an injury to plaintiff's right thigh. The jury chose to accept the defense's version, which is that the hurricane activity caused the meniscus tear to plaintiff's knee and the aggravated arthritis, while the golf trauma only injured the right thigh. The record does not show that the facts and testimony so overwhelmingly favor plaintiff's assertion that reasonable persons could not have rendered a verdict in favor of defendants. Thus, we do not find the jury's award of $280.00 in medical expenses or its refusal to award future medical expenses manifestly erroneous.
*999 Lost Wages and Loss of Earning Capacity
Plaintiff also asserts the jury erred in not awarding him lost wages or loss of earning capacity damages. A plaintiff seeking damages for lost wages bears the burden of proving lost earnings, as well as the duration of time missed from work due to the accident. Purvis, 209 So.3d at 378. To obtain an award for future lost wages or earning capacity, a plaintiff must present medical evidence indicating with reasonable certainty that there exists a residual disability causally related to the accident. Id.
The jury found that plaintiff failed to prove that he lost any work due to the golf trauma to his right thigh or any residual disability causally related to the incident. Plaintiff did not introduce any wage record, tax records or other documentation establishing pre-injury and post-injury earnings. There was inconsistent testimony regarding one disaster clean-up contract that plaintiff allegedly could not accept because of his injuries. Further, there was no medical testimony that plaintiff was unable to work or had any residual disability limiting his ability to work.
Accordingly, considering the evidence and testimony, we cannot conclude that the jury's finding that plaintiff did not prove he was entitled to past or future lost wages, or loss of earning capacity to be manifestly erroneous. Thus, we find no error in the jury's denial of plaintiff's claims for lost wages or loss of earning capacity. This assignment of error is without merit.
General Damages
Mr. Hunter claims that the jury's general damage award of $35,000 is abusively low considering his injuries.[1] The assessment of the appropriate amount of general damages, by a trial judge or jury, is a determination of fact, one entitled to great deference on review. Joseph v. Netherlands Ins. Co., 15-549 (La. App. 5 Cir. 2/24/16), 187 So.3d 517, 519. In reviewing a general damage award, Louisiana appellate courts do not consider what they think is an appropriate award, but rather review the exercise of discretion by the trier of fact. Id. Before a court of appeal can disturb an award made by a fact finder, the record must clearly reveal that the trier of fact abused its discretion in making its award. Thibodeaux v. Donnell, 16-570 (La. 1/20/17), 219 So.3d 274, 278.
The jury verdict indicates the jury found that plaintiff, as a result of the golf trauma, suffered a right thigh bruise, which only required two doctor visits. In addition, Dr. Finney testified that the golf trauma likely caused a short term injury. Given the conservative medical treatment associated with the injury at issue here, we find the record does not clearly reveal that the jury awarded an abusively low amount of general damages. Therefore, this assignment of error lacks merit.
Motion for Judgment Notwithstanding the Verdict/New Trial
Plaintiff argues that the trial court erred in denying his post-trial motions for JNOV and/or new trial on the issue of quantum and/or additur.
In reviewing the denial of a motion for judgment notwithstanding the verdict, this Court has stated the following:
JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly *1000 in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact.
Buckheister v. U.S. Envtl. Servs., L.L.C., 11-1148 (La. App. 5 Cir. 5/31/12), 97 So.3d 414, 420-21, writ denied, 12-1462 (La. 10/8/12), 98 So.3d 861.
As discussed above, having reviewed the testimony and evidence presented at trial, we find that reasonable persons could reach different conclusions as to whether the golf incident caused plaintiff's knee problems or only an injury to plaintiff's right thigh. The jury verdict indicates the jury found the defense's position more reasonable, specifically that the golf trauma only injured plaintiff's right thigh. The record does not show that the facts and testimony so overwhelmingly favor plaintiff's position that reasonable persons could not have rendered a verdict in favor of defendants. Accordingly, we find no error in the trial court's denial of plaintiff's motion for judgment notwithstanding the verdict.
Plaintiff further argues that the trial court erred in denying the motions for new trial on the sole issue of quantum and/or additur. La. C.C.P. art. 1814 provides a procedure for additur or remittitur of the verdict or judgment in cases tried before a jury when the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only. Buckheister v. U.S. Envtl. Servs., L.L.C., supra. For the reasons discussed above relative to the jury's damage award, and the refusal to award certain damages, the record does not support a finding that the jury's award was so inadequate that a new trial should be granted. We therefore find no error in the trial court's denial of plaintiff's motion for new trial.
CONCLUSION
For the foregoing reasons, we affirm the jury's verdict.
AFFIRMED

Defendants did not appeal the amount of the general damage award.